**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOHN JAMISON,

                             Plaintiff,

   v.                                               No. 03-CV-913
                                                     (FJS/DRH)

MR. HAYDEN, Psychologist at Clinton
Correctional Facility; MR. BUSHI, Correctional
Counselor at Clinton Correctional Facility; CAPT.
BROWN, Captain of Security at Clinton
Correctional Facility; C.O. PLANTO, Sergeant
for Security at Clinton Correctional Facility; MS.
TURNER, Assistant Deputy of Programs at
Clinton Correctional Facility; MR. ZIMMERMAN,
Correctional Counselor at Attica Correctional
Facility; MR. THORN, Correctional Counselor at
Elmira Correctional Facility; and MR. CERIO;
Deputy Superintendent of Programs at Elmira
Correctional Facility,

                             Defendants.

---

**APPEARANCES:**                        **OF COUNSEL:**

JOHN JAMISON
Plaintiff Pro Se
No. 95-A-3933
Wende Correctional Facility
Post Office Box 1187
Alden, New York 14004-1187

HON. ANDREW M. CUOMO           STEVEN H. SCHWARTZ, ESQ.
Attorney General for the                MICHAEL G. McCARTIN, ESQ.
   State of New York                    Assistant Attorneys General
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff pro se John Jamison ("Jamison"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, eight DOCS employees, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments. See Compl. (Docket No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 71. Jamison opposes the motion. Docket No. 73. For the following reasons, it is recommended that defendants' motion be granted.

**I. Background**

The facts are presented in the light most favorable to Jamison as the non-moving party. See Ertman v. United States, 165 F. 3d 204, 206 (2d Cir. 1999).

In February 2002, Jamison was incarcerated at Clinton Correctional Facility ("Clinton") and participated in the Merle Cooper program.[2] See Turner Decl. (Docket No. 71) at ¶ 4. On February 27, 2002, Jamison requested protective custody[3] form. See Hayden Decl. (Docket

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] The Merle Cooper program is a therapeutic program for inmates and is housed in the Clinton Annex. See Griffin v. Coughlin, 743 F. Supp. 1006, 1010 (N.D.N.Y. 1990). "Inmates in the . . . program are granted the following amenities: wood shop; gym; movies; cooking facilities; refrigerators; color television; communication meetings and group therapy." Id.; see also Compl. at ¶ 2.

[3] An inmate qualifies for voluntary protective custody if he or she "is a potential victim or a witness likely to be intimidated, or who lacks the ability to live in the general facility community and who may for good cause be restricted from communication with the

No. 71), Ex. A; see also Compl. at ¶¶ 21-24. No action was taken on the request. Between March 8 and April 2, 2002, Jamison was incarcerated at various DOCS facilities. See Turner Decl., Ex A. On April 5, 2002, Jamison was transferred to Attica Correctional Facility ("Attica") and placed in general population. Id.; see also Compl. at ¶¶ 32-33. On April 7, 2002, Jamison requested that he be placed into voluntary protective custody. See Compl. at ¶¶ 33-34; see also Zimmerman Dec. (Docket No. 71), Ex. B. Shortly thereafter, defendant Zimmerman interviewed Jamison and endorsed Jamison's request to be placed into voluntary protective custody. See Zimmerman Decl., Ex. B; see also Compl. at ¶ 34. On April 17, 2002, Jamison's request for protective custody was approved by Attica's Superintendent. Id.

On or about August 2, 2002, Jamison was transferred to Elmira Correctional Facility ("Elmira") and was placed in general population. See Compl. at ¶ 36; see also Turner Decl., Ex. A. Shortly thereafter, Jamison requested protective custody, but his request was denied by defendant Thorn. See Compl. at ¶ 36. However, on September 6, 2002, Jamison's request for protective custody was granted. See Compl. at ¶ 40. This action followed.

## II. Discussion

Jamison asserts four causes of action against each defendant, alleging that they violated his due process and equal protection rights under the Fourteenth Amendment and failed to protect him from inmate assaults in violation of the Eighth Amendment. Jamison

---

general inmate population, and who voluntarily accepts admission into protective custody." N.Y. Comp. codes R. & Regs., tit. 7, § 330.2 (a) (2007).

also contends that defendants failed to provide him with a typewriter in violation of the First Amendment. Defendants seek judgment on all claims.

### A. Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Id.; see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.

2006). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Failure to Protect

Jamison contends that by leaving him in general population at Attica and Elmira for ten and thirty-five days respectively following his requests for protective custody, defendants knew of and disregarded an excessive risk to his safety. See Compl. at ¶¶ 32, 35; see also Compl (Part II)[4] (Docket No. 1) at ¶ 2.

Prison officials have a duty to protect inmates from violence by other inmates. See Farmer v. Brennan, 511 U.S. 825, 833 (1994). When asserting a failure to protect claim, an inmate must establish that he was "incarcerated under conditions posing a substantial risk of serious harm" and that the defendants acted with deliberate indifference to the inmate's safety. Id. at 834. Deliberate indifference is established when the official knew of and disregarded an excessive risk to inmate health or safety. Id. at 837. However, "the issue is not whether [a plaintiff] identified his enemies by name to prison officials, but whether they were aware of a substantial risk of harm to [him]." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 621 (2d Cir. 1991).

---

[4] Complaint (Part II) refers to the second half of Jamison's complaint entitled "Part Two of Complaint Defendants in Violation of DOCS Directive, No. 4948." See Docket No. 1.

5

Jamison contends that by leaving him in general population at Attica and Elmira, defendants placed his life "in a prevasive [sic] risk of injury." See Compl. at ¶ 32. On April 5, 2002, Jamison arrived at Attica and was placed in general population. See Turner Decl., Ex. A. On April 7, 2002, Jamison requested protective custody and was interviewed by defendant Zimmerman on April 11. See Zimmerman Decl., Ex. B; see also Compl. at ¶ 34. The superintendent granted Jamison's request ten days later on April 17, 2002. Id. On or about August 1, 2002, Jamison was transferred from Attica to Elmira. See Compl. at ¶ 36; see also Turner Decl., Ex. A. Upon arrival at Elmira, Jamison requested protective custody status. See id. Defendant Thorn initially denied Jamison's request, but Jamison's request was ultimately granted thirty-five days later on September 6, 2002. See Compl. at ¶¶ 36-40.

Here, Jamison's contention that defendants were deliberately indifferent to his safety is without merit. At both Attica and Elmira, defendants granted Jamison's requests for protective custody status, albeit not as quickly as Jamison would have preferred. Further, Jamison fails to allege any injury that resulted from being temporarily housed in general population. The law is clear that an inmate must demonstrate an "actual injury" when alleging a constitutional violation. See Brown v. Saj, No. Civ. 06-6272 (DGL), 2007 WL 1063011, at *2 (W.D.N.Y. Apr. 5, 2007) (citing Lewis v. Casey, 518 U.S. 343, 349 (1996)). Jamison simply contends that he suffered "severe stress" as a result of being housed in general population. See Pl. Reply Statement of Facts (Docket No. 76) at ¶ 29.[5] However,

---

[5] Notably, Jamison does not contest the defendants' contention that he did not suffer any physical injury while incarcerated at Attica. See Pl. Reply Statement of Facts at ¶ 27.

"[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e) (2003); see also Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002) (holding that § 1997e(e) "applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury").

Thus, because Jamison has failed to demonstrate any actual injury from defendants' delay in granting protective custody, Jamison has failed to state a claim under the Eighth Amendment.  See Brown, 2007 WL 1063011, at *2 (dismissing inmate's failure to protect claim for failure to demonstrate an actual injury); Cruz v. Hillman, No. Civ. 01-4169 (DAB/DF), 2002 WL 31045864, at *8-9 (S.D.N.Y. May 16, 2002) (holding that an inmate's fear that defendants' refusal to place him in protective custody would subject him to assaults by his enemies was insufficient to state a claim under the Eighth Amendment); Hudson v. Greiner, No. Civ. 99-12339 (LAP), 2000 WL 1838324, at *6-7 (S.D.N.Y. Dec. 13, 2000) (holding that fear of assault, without any actual injury, was insufficient to state a claim).[6]

Therefore, it is recommended that defendant's motion on this ground be granted.

---

[6] Jamison also contends that while in general population at Elmira, he was denied meals on two separate occasions.  See Compl. at ¶¶ 36, 39.  However, in the instant action, he fails to name any of the officers who allegedly denied him his meals.  It is also undisputed that the meals were available to Jamison as part of the general population but that he declined to leave his cell for the meals.  For both reasons, defendants are entitled to judgment as to Jamison's claims regarding the meals.

**C. Due Process**

Jamison contends that defendants violated his due process rights when they removed him from the Merle Cooper Program without cause. See Compl. at ¶ 49. Jamison also contends that defendants failed to provide him due process before placing him in protective custody. Id. at ¶ 47.

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

Jamison contends that although he requested protective custody on February 27, 2002, he was misled about the true nature of the document he signed by "sergeant Plattno." See Compl. at ¶ 22; see also Pl. Reply Statement of Facts at ¶ 15. However, even assuming that Jamison was somehow coerced into signing the voluntary protective order, he has failed to establish a constitutional deprivation because he requested, and was granted, release from protective custody on March 11, 2002. See Turner Decl., Ex. A.

A confinement of such limited duration fails to establish an atypical or significant hardship under Sandin. See Jackson v. Mahoney, No. Civ. 92-3405 (LAP), 1996 WL 509677, at *7-8 (S.D.N.Y. Sept. 9, 1996) (holding that inmate's placement in involuntary protective custody for approximately forty-five days did not constitute an atypical or

8

significant hardship); see also Hynes v. Squillace, 143 F.3d 653, 657-58 (2d Cir. 1998); Smart v. Goord, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006). Moreover, as to Jamison's contention that he was removed from the Merle Cooper Program without due process, he has failed to establish a constitutional violation because inmates do not enjoy a protected liberty interest in being assigned to a particular program or job while incarcerated. See, e.g., Hall v. Unknown Named Agents of N.Y. State Dep't for Corr. Servs. for APPU Unit at Clinton Prison, 825 F.2d 642, 645-46 (2d Cir. 1987) (no protected liberty interest in assignment to the Assessment Program and Preparation Unit ("APPU")); Frazier, 81 F.3d at 318 ("no protected liberty interest in a particular job assignment").

Accordingly, it is recommended that defendants' motion on this ground be granted.

### D. Access to Courts

Liberally construed, Jamison's complaint alleges that he was denied access to the courts while at Elmira. See Compl. (Part II) at ¶¶ 5-7.

All persons have a constitutional right of access to the courts. Lewis, 518 U.S. at 350; Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997). To establish a violation of the right of access to the courts, a prisoner must demonstrate that his or her efforts to pursue a legal claim were impeded. Lewis, 518 U.S. at 351; Bourdon v. Loughren, 386 F.3d 88, 92-93 (2d Cir. 2004). A plaintiff must demonstrate not only that a defendant's conduct was deliberate and malicious but also that this conduct caused an actual injury such as the "dismissal of an otherwise meritorious legal claim." Cancel v. Goord, No. Civ. 00-2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citing Lewis, 518 U.S. at 351). Here, Jamison

9

contends that defendants' failure to supply him with a typewriter resulted in his "denial of entry in to the court of last resort." Compl. (Part II) at ¶ 7. However, inmates, as a matter of law, do not have a constitutional right to a typewriter. See Walton v. Waldron, 886 F. Supp. 981, 986 (N.D.N.Y. 1995); see also Taylor v. Coughlin, 29 F.3d 39, 40 (2d Cir. 1994). Thus, as a matter of law, Jamison's claim must fail.

Therefore, it is recommended that defendants' motion as to Jamison's access to courts claim be granted.

### E. Equal Protection

Jamison contends that defendants violated his equal protection rights under the Fourteenth Amendment.

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." Myers v. Barrett, No. Civ. 95-1534(RSP/GJD), 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997). In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005).

Here, Jamison makes only vague and conclusory allegations that he was denied the equal protection of the laws and thus has failed sufficiently to show an equal protection violation.  See De Jesus v. Sears Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996).  Equally significant here is that the complaint contains no allegation as to which inmates in a similar situation were treated differently than Jamison.  Oliver v. Cuttler, 968 F. Supp. 83, 88 (E.D.N.Y. 1997).  Thus, Jamison has failed to raise any triable question of fact as to this claim.

Therefore, it is recommended that defendants' motion on this ground be granted.

### F. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229 (N.D.N.Y. 2002), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, as discussed supra, accepting all of Jamison's allegations as true, he has not shown that defendants violated his constitutional rights.

Therefore, in the alternative, defendants' motion for summary judgment on this ground should be granted.

11

### III.  Conclusion[7]

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Docket No. 71) be **GRANTED** as to all claims and all defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: August 7, 2007
         Albany, New York

*[signature: David R. Homer]*
United States Magistrate Judge

---

[7]  Defendants also contend that Jamison failed to exhaust his available administrative remedies.  See Defs. Mem. of Law (Docket No. 71) at 3-5.  However, it is recommended herein that defendants' motion should be granted as to all of Jamison's claims on other grounds.  Thus, this argument need not be addressed.